UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

№ 13-CV-01082

KAREN BRIM,

Plaintiff,

VERSUS

THE CITY OF NEW YORK, P.O. TIMOTHY REILLY, Shield No. 05913, Individually and in his Official Capacity, P.O. RALPH GIORDANO, Shield No. 31691, Individually and in his Official Capacity, SERGEANT SALVATORE MANNINO, Shield No. 02743, Individually and in his Official Capacity, and P.O. "JOHN DOE", Individually and in his Official Capacity (the name John Doe being fictitious, as the true name is presently unknown),

Defendants.

**REPORT & RECOMMENDATION**

**August 16, 2016**

TO THE HONORABLE STERLING JOHNSON, JR.,
SENIOR UNITED STATES DISTRICT JUDGE

**RAMON E. REYES, JR., U.S.M.J.**:

In March 2013, plaintiff Karen Brim ("Brim") commenced this action against The City of New York, Police Sergeant Salvatore Mannino, and Police Officers Timothy Reilly ("Officer Reilly") and Ralph Giordano, alleging violations of her civil rights pursuant to 42 U.S.C. § 1983 and related state tort claims. On July 2, 2015, following a seven-day jury trial, Officer Reilly was found liable for excessive force and intentional infliction of emotional distress ("IIED"), but not for false arrest, assault, or battery. Brim was awarded $30,000 for each meritorious claim. No liability was apportioned to the remaining defendants.

Officer Reilly moved to vacate the verdict pursuant to Fed. R. Civ. P. 50 (Dkt. No. 113) and Brim moved for a new trial on damages for excessive force pursuant to Fed. R. Civ. P. 59 (Dkt. No. 107). Your Honor has referred the motions to me for a report and recommendation. For the reasons discussed below, I respectfully recommend that Officer Reilly's Rule 50 motion be

1

DENIED with regard to excessive force and GRANTED with regard to IIED, and that Brim's Rule 59 motion be GRANTED.

## BACKGROUND[1]

As they exited a residential building on April 30, 2012, Officer Reilly and two other police officers passed Brim and her son, Dontay Blackwood ("Dontay"), on a staircase landing. (Dkt. No. 58 (Order Denying Motion for Summary Judgment ("MSJ Order") at 2-3)). An argument ensued between Officer Reilly, Brim, and Dontay. *Id.* at 2. At trial, witnesses gave conflicting testimony regarding the exact positions of Officer Reilly, Brim, and Dontay, as well as of events immediately preceding Brim's injury. (Dkt. No. 115 (Memorandum In Support of Defendant's Rule 50 Motion ("Df.'s Rule 50 Br.") at 2-3)).[2] At some point Officer Reilly attempted to reach for or grab Dontay, and in so doing either threw Brim five feet into a wall, pushed her down the stairs, or accidently bumped into her causing her to fall. *Id*. at 3-5. Brim was then arrested and charged with obstructing governmental administration, disorderly conduct, assault, and resisting arrest. (MSJ Order at 4). Following her arrest Brim, screaming in pain, was unable to walk under her own power. (ECF Dkt. No. 107 (Memorandum in Support of Plaintiff's Rule 59 Motion ("Pl.'s Rule 59 Br.")) at 2-3). It was later discovered that she had suffered a severe knee fracture necessitating surgery and physical therapy. *Id*. Her expert witness, Dr. Tyorkin, testified that Brim may suffer a future arthritic condition and eventually may need a total knee replacement. *Id.* at 6.

## DISCUSSION

### I. Officer Reilly's Rule 50 Motion

Officer Reilly has moved for judgment as a matter of law, pursuant to Fed. R. Civ. P. 50, arguing that a reasonable jury could not have found him liable for excessive force or IIED. (Dkt. No. 113). To prevail on a Rule 50 motion Officer Reilly must demonstrate that, "considering the evidence in the light most favorable to [Brim] and drawing all reasonable evidentiary inferences in [her] favor, there [is] 'no legally sufficient evidentiary basis for a reasonable jury to find'" in Brim's favor. *Nimely v. City of New York*, 414 F.3d 381, 390 (2d Cir. 2005) (quoting Fed. R. Civ. P. 50(a)). The movant on a Rule 50 motion bears a "particularly heavy" burden. *Cross v. New York City Transit Auth.*, 417 F.3d 241, 248 (2d Cir. 2005). The Court "may not 'assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute [its] judgment for that of the jury.'" *Nimely*, 414 F.3d at 390 (quoting *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 429 (2d Cir. 1995)); *see also Busch ex rel. Estate of Busch v. City of New York*, 224 F.R.D. 81, 96 (E.D.N.Y. 2004) ("The more sharply the evidence conflicts, the more reluctant the judge should be to substitute his judgment for that of the jury."). It is not enough for the Court to disagree with the jury verdict. *See Cross*, 417 F.3d at 247. Rather, Officer Reilly must prove either that "there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture" or that there is "such an overwhelming amount of evidence in [his] favor…that reasonable and fair minded men could not

---

[1] Having presided over the trial, Your Honor is fully familiar with the facts of this case. This brief background is intended solely to aid the reader in understanding the case.

[2] Reference is made to page numbers assigned by the parties.

2

arrive at a verdict against him." *Weather v. City of Mt. Vernon*, 474 F. Appx 821, 822-23 (2d Cir. 2012) (internal citations omitted).

A.  Excessive Force

Officer Reilly contends he is entitled to judgment as a matter of law on Brim's excessive force claim because there was insufficient evidence supporting the verdict; because a reasonable jury could not have found excessive force but no false arrest, assault, or battery, and; because he is entitled to qualified immunity. All three arguments require the Court to weigh witness credibility and substitute its own judgment for that of the jury. As such, I recommend denying Officer Reilly's Rule 50 motion with regard to excessive force.

1.  Legal Sufficiency of the Evidence

The use of force by a police officer does not automatically trigger civil liability, rather the officer will only be held liable if the amount of force used was not objectively reasonable. *See Graham v. Connor*, 490 U.S. 386, 388 (1989) (excessive force claims are "analyzed under the Fourth Amendment's 'objective reasonableness' standard."). Officer Reilly argues that, based on the inconsistent and conflicting evidence presented at trial, a reasonable jury could not find his actions objectively unreasonable. (Df.'s Rule 50 Br. at 6). He notes that witnesses gave conflicted testimony regarding events just prior to the incident, including where Brim was standing relative to Officer Reilly and whether she threatened him with a broom. *Id.* at 3-5, 7. Additionally, Officer Reilly argues Dr. Tyorkin's testimony, that Brim suffered blunt force trauma, is inconsistent with Brim's testimony that her knee struck the sharp corner of the wall. *Id.* at 7, 10-11. In light of this conflicting testimony, Officer Reilly contends the verdict must have been "the result of sheer surmise and conjecture." (Dkt. No. 119 (Reply Memorandum In Support of Defendant's Rule 50 Motion ("Df.'s Rule 50 Rep.") at 2)).

This argument confuses the legal standard by asking the Court to weigh witness credibility and ultimately substitute its own judgment for that of the jury. *See Nimely*, 414 F.3d at 390. Such a course is impermissible, especially where the jury's judgment in weighing conflicting evidence is afforded substantial weight. *See Busch ex rel. Estate of Busch,* 224 F.R.D. at 96. While the evidence suggests several different narratives, the only relevant question is whether one of these narratives would permit a reasonable jury to find that Officer Reilly used excessive force. A reasonable jury could have found that Officer Reilly employed excessive force by grabbing Brim without provocation and after giving no orders or instructions, and then throwing her several feet into a wall. (ECF Dck. No. 117 (Memorandum in Opposition to Defendant's Rule 50 Motion ("Pl.'s Rule 50 Opp.") at 8)). The jury was appropriately positioned to weigh witness credibility and reach its judgment. It is not the role of the Court to second guess the jury's reasonable verdict.[3]

---

[3] Alternatively, Officer Reilly argues that "[t]o the extent that the Court finds that there is any weight to the testimony of plaintiff and her witnesses, plaintiff nonetheless fails to establish that her version of events is more likely than not true as compared to the testimony of the defendants and their witnesses…" Even if this were true, a Rule 50 motion may be granted only where there is "such an overwhelming amount of evidence …that reasonable and fair minded men could not arrive at a verdict against [Officer Reilly]." *Weather*, 474 F. Appx at 822-23 (internal citations omitted). Such is not the case here.

### 2. Consistency of the Verdicts

Officer Reilly argues that a reasonable jury could not have found excessive force while simultaneously finding no false arrest, assault, or battery. (Df.'s Rule 50 Br. at 7, 11). Where the jury has rendered potentially inconsistent verdicts, courts should be even more reluctant to grant a Rule 50 motion. *See Harris v. Niagara Mohawk Power Corp.*, 252 F.3d 592, 598 (2d Cir. 2001) ("[W]e believe that the proper approach when faced with seemingly inconsistent verdicts is not to credit one finding and vacate the other. Rather…a reviewing court must adopt a view of the case, if there is one, that resolves any seeming inconsistency.") (internal quotations omitted). These verdicts can be viewed so as to resolve any seeming inconsistencies.

The jury found Officer Reilly had probably cause to arrest Brim. (Dkt. No. 116 (Fitch Declaration in Opposition to Rule 50 Motion, Exhibit H, Special Verdict Form ("Fitch Dec. in Opp. Ex. H.: Special Verdict Form") at 1)). Officer Reilly contends that this verdict "demonstrate[s] the jury believed [Brim's] conduct included behavior that *might* necessitate force," and that "the jury *could* have found that force was needed…" (Df.'s Rule 50 Br. at 8-9) (emphasis added). This argument suggests, however, that the jury also *might* also have found that Brim's conduct did not necessitate Officer Reilly's use of any force, or that Officer Reilly, though justified in using some force, used an excessive and unreasonable amount of force. *See Graham*, 490 U.S. at 399 (amount of force used must be reasonable.)

Similarly, a reasonable jury could have found in favor of Officer Reilly with regard to the assault and battery claims but for Brim on the use excessive force. The jury charge on assault instructed that Officer Reilly should not be found liable if he acted in self-defense. ("Fitch Dec. in Opp. Ex. G.: Jury Instructions" at 45). The jury charge on battery instructed if "a Defendant used no more force than they reasonably believe to be necessary, then the Defendant did not commit battery." *Id.* at 46. Based on these instructions, Officer Reilly argues that it a reasonable jury should have found his actions reasonable and justified. (Df.'s Rule 50 Br. at 11). However, the jury charge for both claims also required a finding of intent, which is not required for excessive force. (Fitch Dec. in Opp. Ex. G.: Jury Instructions at 38-39, 44, & 46); *see also Kerman v. City of New York*, 261 F.3d 229, 244 (2d Cir. 2001) (excessive force claims are evaluated "without regard to [the officer's] underlying intent or motivation."); *Brown v. City of New York*, 798 F.3d 94, 100-101 (2d Cir. 2015) ("[T]he standard is one of objective reasonableness, and the officer's state of mind, whether evil or benign, is not relevant."). A reasonable jury could have reached these verdicts based on the element of intent; that is, Officer Reilly lacked intent, which shielded him from verdicts of assault and battery, but not excessive force. Even if the verdicts are inconsistent, there is no clear basis for determining which verdict is irrational. Officer Reilly contends that the excessive force verdict was irrational. However, it is equally possible that the jury was acting irrationally when it found no liability for false arrest, assault, and battery. With no way of distinguishing, the Court should refrain from vacating the excessive force verdict.

### 3. Qualified Immunity

Officer Reilly argues that even if the excessive force claim is predicated on

4

legally sufficient evidence, he is entitled to qualified immunity. (Df.'s Rule 50 Br. at 12). A police officer is entitled to qualified immunity "insofar as [his] conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In assessing qualified immunity, the Court must consider whether a clearly established right was violated and "whether a reasonable person, acting under the circumstances then confronting a defendant, would have understood that his actions were unlawful." *Barns v. Furman*, 629 Fed. App. 52, 53 (2d Cir. 2015) (internal quotations omitted).

There is no question that excessive force violates a clearly established constitutional right. *Hartman v. Cty. of Nassau*, No. 04-cv-1784 (CLP), 2008 WL 1923127 *12 (E.D.N.Y. Apr. 28, 2008) ([T]he right of an individual to be free from subjection to excessive force is well-established."). The only question here is one of reasonableness; that is "whether it was objectively reasonable for [Officer Reilly] to believe that his treatment of [Brim] did not violate that right."). *Calamia v. City of New York*, 879 F.2d 1025, 1036 (2d Cir. 1989).

The question of reasonableness is one of fact and as such is the proper domain of the jury. *Harolow*, 457 U.S. at 815 ("[A]n official's subjective good faith has been considered to be a question of fact that some courts have regarded as inherently requiring resolution by a jury."). In *Posr v. Doherty*, the Second Circuit considered an officer's attempt to invoke qualified immunity in the context of excessive force. The Court found

> "[t]he right of an individual not to be subjected to excessive force is well established and the defendants make no claim to the contrary. Rather the defendants argue that, as a matter of law, it was objectively reasonable for each of them to believe that his treatment of Posr did not violate that right. The problem with this argument is that it depends upon the officers' version of the facts – a version the jury plainly rejected. Whether the officers reasonably believed that their use of force was not excessive was properly a jury issue."

*Posr v. Doherty*, 944 F.2d 91, 95-96 (2d Cir. 1991).

Here, Your Honor instructed the jury to "determine whether the amount of force used to effect the arrest was that which a reasonable officer would have employed…under similar circumstances." (Fitch Dec. in Opp. Ex. G.: Jury Instructions at 38). This is the central question for qualified immunity. Officer Reilly offers no more than his own interpretation of the evidence and his say so that he reasonably believed that his use of force was not excessive. The jury has considered this question and rendered a fair and impartial verdict. The Court should defer to the jury's assessment and reject Officer Reilly's post hoc rationalizations.

### B. Intentional Infliction of Emotional Distress

Officer Reilly requests that the Court vacate the jury's verdict in favor of Brim on IIED because it is predicated upon

5

insufficient evidence.[4] (Df.'s Rule 50 Br. at 16). IIED requires "extreme and outrageous conduct…undertaken with intent to cause, or disregard of a substantial probability of causing, severe emotional distress…[that] did in fact cause severe emotional distress." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 157-58 (2d Cir. 2014) (internal quotations omitted). The evidence shows Brim suffered serious injuries, but not "severe emotional distress." At no time in her testimony or the testimony of any other witness, including her son and doctor, was evidence presented suggesting emotional distress. Rather, evidence presented at trial speaks only to physical injury and conventional pain and suffering, a point Officer Reilly raises in his Rule 50 motion. (Df.'s Rule 50 Br. at 17).

In a footnote in her Memorandum in Opposition to Defendant's Rule 50 Motion, Brim argues that evidence of emotion distress exists, but does not specify what that evidence is or where it can be found in the record, and that "emotional distress can be inferred in cases where the acts giving rise to the claim are sufficiently egregious." (Pl.'s Rule 50 Opp. at 24 n.4). In support of this proposition Brim cites two cases, *Rentas v. Ruffin*, No. 10-cv-6242 (AKH) (S.D.N.Y. May 30, 2014) and *Hughes v. Pacienza*, 35 Misc.3d 1207(A), *3 (Sup. Ct. 2012). (Pl.'s Rule 50 Opp. at 24 n.4). In *Rentas*, an unpublished opinion only available through the Pacer website, a prison guard was accused of pursuing criminal charges against a prisoner on the basis of fabricated evidence. *See Rentas*, No. 10-cv-6242 at *2-4. The prisoner-plaintiff "testified that he was constantly fearful of, and distressed by, the possibility that he could be convicted…and face a long prison term." *Id.* at 6. The court noted "that causing an innocent individual to be imprisoned is outrageous conduct and that emotional distress can be inferred." By contrast, Brim was not falsely arrested and did not have to live with the threat of wrongful imprisonment. *Id.* In *Hughes*, the plaintiff resigned after discovering a camera had been installed in her workplace bathroom. *See Hughes*, 35 Misc.3d at *1. The court found that this resignation was proof of emotional distress.[5] *See Id.* at 3. Unlike the plaintiffs in *Rentas* and *Hughes*, Brim offered no evidence of emotional distress.

Absent any evidence of emotional distress, a reasonable jury could not find severe emotional distress. Therefore, I conclude that no rational juror could have found in Brim's favor on her IIED claim, and I therefore recommend granting Officer Reilly's Rule 50 motion with regard to IIED.

## II. **Brim's Rule 59 Motion**

Brim seeks a new trial on damages, contending that the damages awarded for

---

[4] Officer Reilly further contends IIED cannot stand alone as a separate cause of action where it overlaps with a more conventional tort, such as excessive force. (Df.'s Rule 50 Br. at 16). This is generally true, however the Second Circuit has noted that when the jury is instructed that "the IIED claim must be separated from the emotional damages it award[s]" for excessive force, the error is harmless. *See Rentas v. Ruffin*, 815 F.3d 214, 227 (2d Cir. 2016). Your Honor provided such an instruction. (Fitch Dec. in Opp. Ex. H. Special Verdict Form).

[5] Brim quotes *Hughes* for the proposition that "proof of emotional distress is an element of a plaintiff's claim only when the outrageousness of the defendant's conduct is actually in dispute." (Pl's Rule 50 Opp. at 24 n.4) However, the actual quote reads "**medical** proof of emotional distress…" *Hughes*, 35 Misc.3d at *2 (emphasis added). Brim has offered no evidence, medical or otherwise.

excessive force were insufficient. [6] (Pl.'s Rule 59 Br. at 1). Under Rule 59, a court may "grant a new trial on all or some of the issues", Fed. R. Civ. P. 59(a)(1),[7] when it "is convinced that the jury has reached a seriously erroneous result, or that the verdict constitutes a miscarriage of justice," *Wong v. Mangone*, 450 Fed. Appx. 27, 31 (2d Cir. 2011). This requires the verdict to "shock the judicial conscience…." *Kirsch v. Fleet St., LTD.*, 148 F.3d 149 (2d Cir. 1998). Unlike Rule 50, under Rule 59 the trial judge to may "weigh the evidence himself and need not view it in the light most favorable to the verdict winner." *Manly v. AmBase Corp.*, 337 F.3d 237, 244-45 (2d Cir. 2003). However, deference should still be given to the jury's verdict. *See ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 98-99 (2d Cir. 2014).

When considering the adequacy of damages, the Court must "determine whether the jury's verdict is within the confines set by state law…" *Stampf*, 761 F.3d at 204 (2d Cir. 2014) (internal quotations omitted). Under New York law, such an assessment is based on a comparison with similar cases. *See Id.* ("Under New York law, a court 'shall determine that an award is excessive or inadequate if it deviates materially from what would be reasonable compensation.'…To determine whether a jury award is excessive…courts compare it with awards in similar cases."); *see also Crews v. Cty. of Nassau*, 149 F. Supp.3d 287, 294 (E.D.N.Y. 2015) ("To determine whether an award deviates materially from what would be reasonable compensation, New York state courts look to awards approved in similar cases.") (internal quotations omitted).

The evidences shows Brim suffered a severe fracture to the lateral tibial plateau in her knee, causing substantial pain and requiring surgery. (Dkt. No. 109 (Fitch Declaration in Support of Rule 59 Motion, Exhibit C, Medical Records ("Fitch Dec. in Support, Ex. C: Medical Records")) & (Fitch Dec. in Support, Ex. H: Pain Chart"). As a result of this injury Brim spent 23 days in the hospital[8] (Fitch Dec. in Support, Ex. G: Medical Records), underwent open reduction surgery to repair her knee and permanently affix plates and screws (Fitch Dec. in Support, Ex. I: Post-Surgical Report), attended physical therapy, and was forced to use crutches for eight months and a specialty brace for an additional ten months (Fitch Dec. in Support, Ex. L: Medical Records). Approximately one year after the injury, Brim was experiencing reduced pain (Dkt. No 111 (Lax Dec. In Opp. Ex. C: Tyorkin Cross at 308)) but took Ibuprofen periodically (Lax Dec. in Opp. Ex. B: Tyorkin Direct at 27-28) and experienced a reduced range of motion in her knee. (Fitch

---

[6] Brim does not challenge the damages award for IIED.

[7] The court cannot condition denial of the Rule 59 motion on the parties' acceptance of increased damages. Where the court determines that a jury award is excessive, it may deny the defendant's Rule 59 motion for a new trial on the condition that the plaintiff accept reduced damages. *See Stampf v. Long Island R.R. Co.*, 761 F.3d 192, 204 (2d Cir. 2014) (internal quotations omitted). However, additur, in which damages are increased, violates the Seventh Amendment. *See Dimick v. Schiedt*, 293 U.S. 474, 486-87 (1935); *see also Lenair v. Gauthier*, 301 Fed. Appx. 69, 72 (2d Cir. 2008) ("The Seventh Amendment generally bars the use of additur in federal courts."). This limitation does not apply to state courts. *See Liriano v. Hobart Corp.*, 170 F.3d 264, 272 (2d Cir. 1999).

[8] For 17 of these days, Brim was physically restrained. (MSJ Order at 2). However, Officer Reilly has not been implicated in this restraint and has been found not liable for false arrest. This restraint is not at issue.

7

Dec. in Support, Ex E: Tyorkin Direct at 287-288). She is currently exhibiting early signs of an arthritic condition and may eventually require a total knee replacement. *Id*. Brim is currently able to work and engage in most of the activities she enjoyed prior to the injury. (Lax Dec. in Opp., Ex. A: Brim Direct at 585-587).

In compensation for these injuries, the jury awarded Brim $30,000. Comparing Brim's injuries to those sustained by plaintiffs in similar cases, it becomes clear that the jury's award is grossly insufficient. The low end of the damages range is likely $200,000. *See Castellano v. City of New York*, 584 N.Y.S.2d 114, (2d Dep't 1992) ($200,000: fractured knee, requiring arthroscopic surgery, and possible future arthritic condition); *see also Burton v. New York City Hous. Auth.*, 595 N.Y.S.2d 807 (2d Dep't 1993) ($262,000: fractured knee, requiring reconstructive surgery, signs of arthritic condition, and risk of future total knee replacement); *Lemberger v. City of New York*, 621 N.Y.S. 625 (2d Dep't 1995) ($300,000: torn muscles in the knee, requiring arthroscopic surgery, and signs of an arthritic condition); *Bridges v. City of New York*, 794 N.Y.S.2d 369 (1st Dep't 2005) ($350,000: fractured knee, requiring open reduction surgery and three day hospitalization and six weeks homebound.); *see also Dwyer v. Deutsche Lufthansa, AG*, 686 F.Supp.2d 216 (E.D.N.Y. 2010) ($3,000,000: fractured femur, requiring surgery to insert plates and screws, possible future arthritic condition, risk of future total knee replacement, and additional injuries to the back and shoulder). [9] Adjusted for inflation, the lowest damage award for comparable injury, of which I am aware, was $337.971.70. [10] Officer Reilly has not cited any cases contradicting this view. The jury award of $30,000 is well outside the typical range awarded in similar cases. The difference is enough to shock the conscious. As such, I recommend a new trial be ordered on damages occasioned by Officer Reilly's use of excessive force.

## **CONCLUSION**

For the reasons set forth above, I respectfully recommend that Officer Reilly's Rule 50 Motion for Judgment as a Matter of Law be GRANTED with regard to IIED and DENIED with regard to excessive force. I further recommend that Brim's Rule 59 Motion for a New Trial on damages be GRANTED.

Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Sterling Johnson, Jr. within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).
SO ORDERED.

---

[9] The prior citations only reflect damages for pain and suffering. Any additional award clearly associated with other harms has been deducted from the quoted amount.

[10] Based on the United States Department of Labor, Bureau of Labor Statistics Inflation Calculator.

8

*Ramon E. Reyes, Jr.*
RAMON E. REYES, JR.
United States Magistrate Judge

Dated: August 16, 2016
       Brooklyn, New York